Laura Bank, Respondent, v Vivian Rebold et al., Appellants, et al., Defendants.

Second Department, August 6, 1979

482

### APPEARANCES OF COUNSEL

*Paul B. Bergins* for appellants.

*Lyon & Erlbaum (Herbert A. Lyon* of counsel; *Edward H. Jurith* on the brief), for respondent.

### OPINION OF THE COURT

SUOZZI, J.

In this action to recover damages for personal injuries, summary judgment should have been granted to defendant Avis Rent-A-Car Systems (Avis) dismissing plaintiff's complaint against it.

The complaint alleges that on April 23, 1971 defendant Avis, a foreign corporation doing business in this State, through its agents, rented a Volkswagen car to defendant Rebold and gave the latter permission to drive in Germany until May 13, 1971. On May 7, 1971 plaintiff, a resident of Queens County, was a passenger in the car driven by defendant Rebold in Germany when it collided with a truck driven by a German national and owned by another German national (both named defendants). Defendant Rebold is a Kings County resident.

The negligence alleged in the complaint was as follows: "Solely by reason of the carelessness and negligence of the

defendants herein, they caused and permitted their respective motor vehicles to be improperly maintained and operated same at a greater rate of speed than care and caution would permit under the circumstances, and failed and omitted to provide and/or make timely and adequate use of brakes, signaling devices, and steering mechanisms, with the result that their vehicles collided, causing injury to the plaintiff."

Both Avis and Rebold, in their answers, denied that Avis owned the car and rented it to Rebold.

After interrogatories were served and answered, plaintiff moved for partial summary judgment striking those parts of the appellants' answers wherein it was alleged that Avis did not own the car and did not rent it. In support of the motion, plaintiff's attorney described the alleged negligence solely in terms of the drivers' conduct, stating: "The accident was caused solely by the negligence of the two drivers Rebold and Abramowski."

Plaintiff's counsel also recited the following facts in support of the motion:

(1) The record owner of the car operated by Rebold was a Belgian company, Locadif, S. A., which is not a defendant in the action. Ownership in Locadif is one third in Avis and two thirds in a foreign company known as Anciens Etablissements D'Ieteren Freres (hereinafter D'Ieteren), which is also not a defendant in this action.

(2) Locadif has a license from Avis to participate in a vehicle rental business and to use "Avis" in Belgium.

(3) Avis offers international reservations. Avis receives confirmation from its Belgian licensee as to whether cars are available in Belgium and this information is confirmed to the New York resident by Avis.

(4) This service is an overhead item and does not generate any independent profits.

According to plaintiff, this relationship indicates that Avis and its Belgian licensee are "actually one and the same."

Plaintiff's attorney argues in support of the motion that Avis should be estopped from denying ownership since all billing, reservations, license papers and other documents connected with the rental of the vehicle in Belgium bear the name and famous logo of the defendant corporation.

In opposition to plaintiff's motion and in support of a cross motion for summary judgment in favor of Avis, the senior

vice-president of Avis made the following factual points in his affidavit:

(1) D'Ieteren was, for a number of years prior to 1973, in the automobile rental business and was a licensee of Avis.

(2) "In or about 1970" Avis expressed interest in making an investment in this rental business and in early 1973, Avis and D'Ieteren formed Locadif. Avis invested more than $500,000 and became minority stockholder. D'Ieteren invested the assets of its car rental business, valued at at least $1,000,000, and became majority stockholder. Four of the five directors of Locadif are Belgian representatives of D'Ieteren, none of whom is employed or affiliated with Avis. Locadif's officers are Belgian nationals and Ronald D'Ieteren is president and chief executive officer.

(3) Locadif has been a licensee of Avis since 1973.

The affidavit in support of the cross motion states: "Subject to certain reporting and payment requirements in said agreement, Locadif operates its business entirely independent of Avis. A substantial company with not inconsiderable assets, it maintains its own bank accounts, employs its own staff of employees whom it pays with its own funds, and owns and rents its own property. It purchases and owns the vehicles used in its business. It determines to whom to rent its vehicles, and the charges for the rental thereof, and it maintains, services and insures those vehicles."

In view of these facts, Avis argued that it is totally independent from D'Ieteren and Locadif and cannot be liable for events arising out of Locadif's business.

### THE DECISION OF SPECIAL TERM

In granting plaintiff's motion, and denying Avis' cross motion for summary judgment, Special Term stated:

"The sole issue presented on these motions is whether or not defendant Avis Rent-A-Car Systems, Inc. was the owner of the vehicle rented to this plaintiff or had such an agency relationship to the owner as to make it a proper party defendant.

"Under all of the circumstances in this case the court finds that there was such an integral and close relationship between Avis and Locadif, the actual record owner, that they may be considered together almost as one entity for jurisdic-

tional purposes. *(Gelfand v. Tanner Motors Tours, Ltd.,* 385 F 2d 116 [2d Cir. 1967]).

"In this case, the plaintiff knew only Avis and made her reservations in New York for the rental of the vehicle in Belgium. The signed agreement is on an Avis form with words Avis in gold print with Locadif's identification in small print. Avis here made the international reservation, received confirmation of the reservation from Belgium and in turn confirmed it with the plaintiff. The Belgium licensee, Locadif has no facilities for providing international reservations which clearly suggests that the international reservation service operated by Avis is for the benefit of the licensee in Belgium. The court agrees with plaintiff's contention that this lack of independent profit making status by the international reservation service underscores the fact that Belgian licensee and Avis Rent-A-Car, Inc. are notwithstanding the observance of traditional corporate amenities between them, one and the same. *Frummer v. Hilton Hotels International Inc.,* 19 N. Y. 2d 533, 281 N. Y. S. 2d 41 (1967).

"All supporting papers show that all billing, reservations, license papers and other documents connected with this rental all bear the name and famous logo of the defendant corporation".[1]

### THE APPLICABLE LAW

In this action to recover damages for personal injuries, it must be initially stressed that the only claim of negligence alleged is in connection with the operation of the two vehicles in question by Rebold and the German national. However, since the relationship of Avis to Rebold was concededly not that of a master and servant, it is clear that the doctrine of *respondeat superior,* which imposes liability on a master for injuries to third persons caused by the acts or omissions of his servants (57 CJS, Master and Servant, § 561), will not avail plaintiff in her attempt to impose liability on Avis.

The only other possible theory of liability which can be imposed on Avis is that contained in section 388 of the Vehicle and Traffic Law. That section imposes liability upon

---

1. The statements of fact in Special Term's decision, that "[i]n this case the plaintiff knew only Avis and made her reservations in New York for the rental of the vehicle in Belgium", and that "Avis here made the * * * reservation, received confirmation * * * from Belgium and in turn confirmed it with the plaintiff", have no support in the record. Indeed, it is undisputed that defendant Rebold rented the car.

an owner of a motor vehicle for injuries caused by the negligent operator thereof, so long as the latter is driving the car with the consent or permission of the former. Specifically, subdivision 1 of section 388 of the Vehicle and Traffic Law, which covers a lessor-lessee relationship (see *Cooperman v Ferrentino,* 37 AD2d 474), provides: "Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner. Whenever any vehicles as hereinafter defined shall be used in combination with one another, by attachment or tow, the person using or operating any one vehicle shall, for the purposes of this section, be deemed to be using or operating each vehicle in the combination, and the owners thereof shall be jointly and severally liable hereunder."[2]

As the court stated in *Cooperman (supra,* pp 476-477): "Section 388 of the Vehicle and Traffic Law imposes liability on the owner of an automobile for injuries resulting from negligence in its use or operation by any person 'with the permission, express or implied, of such owner.' The public policy expressed by the statute frames a remedy unknown at common law for the compensation of a party injured by the negligent driver of an automobile through recourse to the owner *(Continental Auto Lease Corp. v. Campbell,* 19 N Y 2d 350, 352; *Rauch v. Jones,* 4 N Y 2d 592, 596); and the ownership of the automobile imports a rebuttable presumption of permission *(Leotta v. Plessinger,* 8 N Y 2d 449, 461; *Brindley v Kirzan,* 18 A D 2d 971, affd. 13 N Y 2d 976)."

■ Accordingly, it was incumbent on plaintiff to demonstrate initially that Avis was the owner-lessor of the Volkswagen driven by defendant lessee Rebold.

In holding that Avis could not deny its ownership or rental of the car driven by Rebold, Special Term cited *Frummer v*

---

■ **2.** Although the statute speaks of the use and operation of a vehicle in this State, the Court of Appeals has stated that "[t]he legislative history of section 388 of the Vehicle and Traffic Law indicates that the Legislature intended to enlarge the vehicle owner's vicarious liability and not to draw the line at the border. The intent was broader than the language employed in the statute" *(Matter of Sentry Ins. Co. [Amsel],* 36 NY2d 291, 295; see, also, *Farber v Smolack,* 20 NY2d 198). Plaintiff also alleges in her brief, without any citation, but without any contradiction in Avis' reply brief, that the German Civil Code has an analogous provision to section 388 of the Vehicle and Traffic Law.

*Hilton Hotels Int.* (19 NY2d 533) and *Gelfand v Tanner Motors Tours* (385 F2d 116). However, neither of those cases is on point.

In *Frummer,* plaintiff sustained injuries in a hotel operated by one of the defendants, a British corporation. The question posed in that case was whether the foreign corporation was doing business in New York State in the traditional sense under CPLR 301 to warrant acquiring in personam jurisdiction in New York by service of process in London under CPLR 313. In holding that jurisdiction was acquired, the court stressed that a reservation service and the corporate defendant were owned in common by other defendants doing business in New York; that the reservation service had a New York office, bank account and telephone number; that the service was run on a nonprofit basis for the British hotel and other hotels; and that it performed other services for the British corporation including advertising, solicitation, acceptance and confirmation of reservations, publicity and maintenance of contracts with travel agents and tour directors. It did all the business which the hotel in England would do if the hotel's officials were in New York. The court stated (p 538):

"Although, in the case before us, the Hilton Reservation Service is not the 'employee' of Hilton (U. K.), the Service and that defendant are owned in common by the other defendants and the Service is concededly run on a 'non-profit' basis for the benefit of the London Hilton and other Hilton hotels.

"It is to be borne in mind, contrary to certain intimations in the dissenting opinion, that this appeal deals with the jurisdiction of our courts over a foreign corporation rather than the liability of a parent company for the acts of a wholly owned subsidiary. (Cf. *Walkovzky v. Carlton,* 18 N Y 2d 414.) The 'presence' of Hilton (U. K.) in New York, for purposes of jurisdiction, is established by the activities conducted here on its behalf by its agent, the Hilton Reservation Service, and the fact that the two are commonly owned is significant only because it gives rise to a valid inference as to the broad scope of the agency in the absence of an express agency agreement such as the one which existed in the *Berner [v United Airlines]* case (3 N Y 2d 1003, *supra)."*

In *Gelfand,* the question was whether foreign corporations were doing business in New York through their promotional representative, Herbert De Graff, so as to give the District Court personal jurisdiction over them under traditional princi-

ples of New York law. In holding in the affirmative, the court stressed that the services performed by De Graff, including the confirmation of reservations and a broad range of other services, made it an agent for the foreign corporations to a sufficient extent so as to satisfy the "doing business test" under New York law. The Federal court, like the court in *Frummer,* stressed that the services of the sales representative were sufficiently important to the foreign corporations that if they did not have a representative to perform them, the corporations' own officials would undertake to perform substantially similar services.

However, in this case, plaintiff is not trying to obtain in personam jurisdiction over Locadif or D'Ieteren, both foreign corporations, based on certain acts of Avis in New York which would constitute doing business here. Locadif and D'Ieteren are not even defendants.

In this case, Avis is a foreign corporation which is concededly doing business in New York; there is no in personam jurisdiction problem present with regard to Avis. The key question is whether there is any connection between Avis, the licensee Locadif, the leased car, and the driver, sufficient to fix liability on Avis for plaintiff's injuries.

Despite the fact that these cases are not controlling—plaintiff apparently concedes same since she does not rely on them in her brief—and that Locadif is clearly the record owner of the car, plaintiff nevertheless maintains that Avis must be treated as the owner-lessor by virtue of two distinct doctrines: (1) the alter ego doctrine; and (2) the doctrine of apparent authority or agency by estoppel. With respect to the latter doctrine, plaintiff phrases the issue as follows in her brief: "Does the holding out of the operation of Locadif, S. A., as an Avis Rent A Car operation create the appearance that a principal-agent relationship exists between the two, upon which a third party relies, as to estop the apparent principal from denying the existence of the agency relationship?"

In our view, both of these theories and the cases cited by plaintiff in support thereof, are totally misplaced in the factual context of this case, and will not suffice to impose liability on Avis.

With respect to the alter ego doctrine, plaintiff places great emphasis on the case of *Buchanan v Canada Dry Corp.* (138 Ga App 588). In *Buchanan,* the plaintiff's decedent was killed when his car was struck by a truck bearing the name South-

east-Atlantic, but being operated by an individual wearing a Canada Dry uniform. The truck, itself, was loaded with Canada Dry beverages and was inscribed with Canada Dry insignias and advertising; there was no indication from the driver's uniform or the truck that Southeast-Atlantic was in any way connected with the accident. It was stipulated that the Atlanta telephone directory has no listing for "Southeast-Atlantic Corporation" but that there is one for "Canada Dry Corporation", which is listed as being located at the same address as the office of Southeast-Atlantic; it was also stipulated that "telephones at Southeast-Atlantic are answered 'Canada Dry.'" Also in evidence was a copy of an agreement between Southeast-Atlantic and Canada Dry, specifying that: (1) Canada Dry granted to Southeast-Atlantic exclusive license to manufacture, bottle, sell and distribute its product in a specified area; (2) Southeast-Atlantic agreed to use only such packaging materials which are approved by Canada Dry and were in strict conformity with its instructions; (3) Southeast-Atlantic agreed to use only Canada Dry's extract and to purchase it only from that company; (4) Southeast-Atlantic agreed to manufacture beverages in strict compliance with the formulae, methods, quality and other instructions of Canada Dry; (5) the buildings, facilities, equipment, vehicles, containers and supplies were subject to Canada Dry's written approval; (6) Southeast-Atlantic agreed to "vigorously and diligently" promote Canada Dry's beverages by, among other things, maintaining an efficient delivery service and employing delivery personnel; (7) Canada Dry was to have "absolute control" over advertising of its beverages produced by Southeast-Atlantic; (8) Southeast-Atlantic agreed to devote all of its efforts to the promotion of Canada Dry and not to engage in selling or distributing any other beverages; and (9) Southeast-Atlantic agreed to allow Canada Dry's agents to enter and examine its premises and to examine its books to ascertain the fulfillment of the agreement.

In reversing the granting of summary judgment to Canada Dry and holding that an issue of fact was presented as to whether Southeast-Atlantic was the alter ego of Canada Dry, the court stated (138 Ga App, at p 592): "In order for Canada Dry to escape liability for the negligence of Southeast-Atlantic's servant, it must demonstrate that Southeast-Atlantic exercised an 'independent business' and was not its alter ego. The term 'independent business' must necessarily be taken to

mean a business or employment separate and independent from the business of the employer. *Yearwood v. Peabody,* 45 Ga. App. 451(1) (164 SE 901). While none of the factors, discussed supra, alone may demonstrate that Southeast-Atlantic was Canada Dry's alter ego, construing the evidence as we must on summary judgment, we believe them collectively to overcome the appellee's motion; there remains as a genuine question of fact whether Southeast-Atlantic was Canada Dry's alter ego. *Wood v. Brunswick Pulp Co.,* 119 Ga. App. 880, supra. It does not appear from the record whether these factors were the result of Canada Dry's 'control' over Southeast-Atlantic or from an excess of zeal by the latter; since the appellee bears the burden of proving that Southeast-Atlantic was not its 'alter ego' the judgment is reversed."

In the case at bar, the relationship between Avis and Locadif is significantly different than that of Canada Dry and Southeast-Atlantic in *Buchanan.* In the case at bar, Avis has only a minority interest in Locadif, only one of its five directors and no officers thereof. Locadif owns the vehicles, insures them and fixes the rent charges. Under these facts, Avis argues that it and Locadif cannot be considered one for the purpose of liability, i.e., Locadif is not the alter ego of Avis. Avis' argument finds support in the holding of *Berkey v Third Ave. Ry. Co.* (244 NY 84) and subsequent cases to the effect that liability cannot be sustained on a theory of alter ego where each corporation has separate assets, employees and business.

■■ Accordingly, the first theory advanced by plaintiff as a means of holding Avis as the owner-lessor of the car driven by Rebold must fall. The second theory advanced by plaintiff, i.e., the doctrine of apparent authority or agency by estoppel, is similarly without merit. This doctrine is incorporated in section 267 of the Restatement of Agency 2d, which provides: "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

The case of *Wood v Holiday Inns* (508 F2d 167), cited in plaintiff's brief, clearly illustrates this doctrine. In *Wood,* the plaintiff sued the nationally known firm Holiday Inns, Inc., as well as its licensee, Interstate Inns, Inc. Interstate Inns was

the holder of a Holiday Inn franchise in Phenix City, Alabama. A clerk who was in the employ of Interstate Inns, Inc., had improperly retained a credit card belonging to the plaintiff, causing him great financial and emotional damages. Holiday Inns raised the defense that the clerk was an employee of the licensee, Interstate Inns, and not of Holiday Inns, making the latter not responsible for his conduct. The District Court agreed, granting Holiday Inns judgment notwithstanding verdict, on the ground that Holiday Inns maintained only a franchise agreement with Interstate and had no right of control over the agent when he wrongfully retained the credit card.

In reversing, the Circuit Court of Appeals held *(supra,* pp 176-177):

"An agency relationship may arise from acts and appearances which lead others to believe that such a relationship has been created. Busby v. Walker, 84 So.2d 304, 307 (La.App.1955). This concept of apparent authority is based upon manifestations by the alleged principal to third persons, and reasonable belief by those persons that the alleged agent is authorized to bind the principal. Gizzi v. Texaco, Inc., 437 F.2d 308, 309 (3rd Cir. 1970); Johnson v. Shenandoah Life Insurance Co., 281 So.2d 636, 640 (Ala., 1973). 'The manifestations of the principal may be made directly to the third person, or may be made to the community, by signs or advertising.' Gizzi v. Texaco, Inc., 437 F.2d 308, 309 (3rd Cir. 1970).

"Questions of apparent authority are questions of fact, and are therefore for the jury to determine. System Investment Corp. v Montview Acceptance Corp., 355 F.2d 463 (10th Cir. 1966); Frank Sullivan Co. v. Midwest Sheet Metal Works, 335 F.2d 33 (8th Cir. 1964); Lind v. Schenley Industries, Inc., 278 F.2d 79 (3rd Cir. 1960). The license agreement between Holiday Inns, Inc., and Interstate provided that the Phenix City facility should be constructed and operated so that it would be 'readily recognizable by the public as part of the national system of "Holiday Inns."' Indeed, the Phenix City facility was required to use the same service marks and trademarks, and exterior and interior decor as the Holiday Inns owned by the parent company. A jury could therefore reasonably conclude that the license agreement required the Phenix City facility to be of such an appearance that travelers would believe it was owned by Holiday Inns, Inc.

"The gravamen of Wood's complaint against Holiday Inns, Inc., is based upon the breach of the innkeeper's common law duty to his guests. Although the innkeeper's duty was apparently delictual in origin, *See* Anon. *[cited generally as* The Innkeepers Case] Y.B. Eas. 42 Ed. III, f. 11, pl. 13 (1369), breach of this duty in Alabama appears to sound in contract. When Wood contracted with the Phenix City Holiday Inn for lodging he contracted for proper treatment by the servants of the innkeeper. *See* Dixon v. Hotel Tutwiler Operating Co., 214 Ala. 396, 108 So. 26, 28 (1926). However, there is virtually no way Wood could have known that the servants in the Phenix City facility were servants of Interstate, not of Holiday Inns, Inc. Indeed, the manifestations that Holiday Inns, Inc., required Interstate to make could only have served to convince Wood that Jessie Goynes was a servant of the parent company.

"We believe that reasonable men could differ regarding Wood's evidence of apparent authority and that the issue should therefore be determined by the jury. *Cf.* Gizzi v. Texaco, Inc., 437 F.2d 308 (3rd Cir. 1970)." (See, also, *Drexel v Union Prescription Centers,* 582 F2d 781, for a thorough discussion of this subject.)

However, the doctrine of apparent authority or agency by estoppel and the cases cited by plaintiff cannot be properly invoked in the case at bar. Apart from the fact that plaintiff's moving papers are totally devoid of any evidentiary facts indicating how or under what circumstances she relied on any representations of Avis that Locadif was Avis' agent, the doctrine cannot be invoked due to an even more fundamental reason. In order to invoke the doctrine of apparent authority or agency by estoppel, the harm incurred by the injured party must have been caused by the one appearing to be a servant or other agent. Under the theory of this case, the only entity which could be considered a servant or agent for the purposes of imposing liability on Avis through the doctrine of apparent authority is Locadif. However, there is no allegation that Locadif was in any way responsible for the accident. As Avis properly points out in its reply brief, "plaintiff does not claim that the car in which she was riding was in any way defective, or that it had not been properly inspected." As heretofore noted, the only negligence alleged by plaintiff was that of the driver Rebold, who was neither the servant nor agent of Locadif or Avis, and the driver of the other vehicle.

Under these circumstances, it is only Locadif, and not Avis, which can be considered, for the purposes of this action, as the owner-lessor of the car which was driven in an alleged negligent manner by the lessee Rebold.

Accordingly, the order appealed from should be reversed, plaintiff's motion for partial summary judgment should be denied, and defendant Avis' cross motion for summary judgment dismissing the complaint as against it should be granted.[3]

HOPKINS, J. P., DAMIANI and TITONE, JJ., concur.

Order of the Supreme Court, Queens County, dated December 12, 1977, reversed, on the law, without costs or disbursements, plaintiff's motion is denied, the cross motion of defendant Avis is granted and the complaint is dismissed as against said defendant.

---

3. In view of the disposition of this appeal, it is unnecessary to resolve any potential conflict of laws issue.