ALEXANDER HACOHEN, Respondent, v BOLLIGER LTD. et al., Appellants.

First Department, May 14, 1985

### APPEARANCES OF COUNSEL

*Joanne Venino* of counsel (*Bigham Englar Jones & Houston,* attorneys), for Bolliger Transport S.N.C. and another, appellants.

*Richard M. Gates* of counsel (*Gates, Singer, Deitsch, Goldberg & Fass,* attorneys), for Bolliger, Inc., appellant.

*Leonard Steiner* of counsel (*Arthur M. Unterman* with him on the brief; *Steiner & Unterman,* attorneys), for respondent.

### OPINION OF THE COURT

SANDLER, J.

In November 1978 Luigi Matassi, an Italian art dealer and plaintiff's assignor, arranged with defendant Bolliger Transport S.N.C., an Italian corporation (hereafter Bolliger Transport) to ship two cases of stonework antiques, which were insured for $7,654, from Rome to Mr. Matassi's consignee, Dr. Edward Haddad, in Maryland. The shipment was picked up at JFK International Airport by Bolliger Transport's exclusive destination agent, Bolliger, Inc., a Connecticut corporation, for temporary storage in the latter's warehouse in Stamford, Connecticut, pending delivery to Dr. Haddad. On January 5, 1979 Matassi wrote to a Mr. Lana of Bolliger Transport that the deal with Haddad was off, and requested that they hold the boxes and insure them for three months. Matassi said he was coming to New York to take possession of the boxes. This letter was answered by Gerry Lynch, the manager of Bolliger, Inc.'s "International Division" advising that they could not insure the contents of the cases, and suggesting that he should discuss with Mr. Lana the extension of the original policy to cover the period that the works were held in the warehouse.

The cases remained in storage at the Stamford warehouse until the middle of May 1979 when Matassi telephoned from New York City to Stephen Gerard, the president of Bolliger, Inc., and asked that the boxes be delivered to Matassi at 18 East 76th Street in Manhattan. Delivery was made on May 16, 1979, at which time Matassi paid accumulated charges and signed a Bolliger, Inc., warehouse bill of lading containing a declared value of 30 cents per pound per item unless otherwise declared by the shipper. Matassi had no success selling the stoneworks and shortly thereafter he requested that the two cases be returned to the Bolliger, Inc., warehouse at Stamford, Connecticut. The cases were again held in storage until Matassi directed Bolliger, Inc. to deliver the cases on June 8, 1979 to a Mrs. Hausmann, Matassi's agent, in Manhattan. Bolliger, Inc., was requested either by Matassi or Mrs. Hausmann to pick up the cartons and return them again to the warehouse.

On July 2, 1979 Mr. Matassi sold and assigned to the plaintiff Alexander Hacohen all right, title and interest in the property, described in the bill of sale as "Two cases containing Sixty-Three (63) art objects sculptured in semi-precious stones". The price stated in the bill of sale is 6,300,000 Italian lire — equivalent to $7,654 — the same amount set forth in the United States Customs Service Consumption Entry Certificate, and the insurance certificate. On September 5, 1979, Bolliger, Inc., received a telex from Costa Rica concerning a certain misdirected shipment of goods, which prompted a search for the two cartons being held for Matassi. The cartons were never found, a police and FBI investigation yielded no results, and to this date the disappearance of the cartons remains a mystery.

On October 6, 1980 plaintiff commenced an action to recover damages of $250,000 for alleged conversion, breach of contract and negligence against Bolliger, Inc., Bolliger Transport and Bolliger Ltd. It has recently been stipulated that Bolliger Ltd. is a "nonexistent corporation" and that all references to that entity in the caption, summons and complaint are withdrawn and deleted. There is accordingly no purpose to be served by any further mention of that defendant's participation in the procedural history of this case.

In its answer, Bolliger, Inc. raised several affirmative defenses including, as here relevant, a limitation of liability to $7,654 due to plaintiff's failure to list a higher value, and inconvenient forum (CPLR 327). Bolliger Transport crossclaimed against Bolliger, Inc. Plaintiff moved for partial summary judgment against defendants on the issue of liability only,

arguing in particular that the issue of liability in this case is governed by *I.C.C. Metals v Municipal Warehouse Co.* (50 NY2d 657), i.e., that a warehouseman's unexplained failure to return stored property establishes a prima facie case of conversion rendering inapplicable a liability-limiting contractual provision. Special Term referred the matter to a Special Referee for hearing and report to enable the court to determine the issues of choice of law and inconvenient forum upon a full presentation of the relevant facts. Special Term thereafter granted plaintiff's motion to confirm the report of the Special Referee, declared that New York is a convenient forum for the case, that the law of the State of New York is applicable to resolve the parties' rights, granted plaintiff's motion for summary judgment against both defendants on the issue of liability only, reasoning that *I.C.C. Metals* controlled, and denied Bolliger Transport's cross motion for summary judgment. Thereafter, Bolliger, Inc., moved for reargument, its cross motion to disaffirm the Special Referee's report and to dismiss the complaint on the ground of inconvenient forum having been inadvertently misfiled by a clerk and not submitted to the court. Special Term granted reargument but adhered to its determination.

■ Turning first to the issue of inconvenient forum, it is firmly established that " 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed' " (*Bata v Bata,* 304 NY 51, 56, quoting *Gulf Oil Corp. v Gilbert,* 330 US 501, 508; *see also, Olympic Corp. v Societe Generale,* 462 F2d 376, 378). In this case the pick up and delivery of the property was initiated from and performed in New York City, and the warehouse bills of lading were signed by Mr. Matassi and Mrs. Hausmann in New York City. In addition, the plaintiff and several potential witnesses are New York residents. Upon these facts, we find no basis for disturbing Special Term's conclusion that New York is not an inconvenient forum for the trial of this action. (*Cf. Bader & Bader v Ford,* 66 AD2d 642, *appeal dismissed* 48 NY2d 649.)

■ We disagree however with Special Term's determination that New York law governs the rights of the parties upon the facts in this case. Plaintiff's action is essentially premised on the alleged conversion or negligence of a Connecticut corporation at a warehouse located in Connecticut. New York recognizes that "*lex loci delicti* remains the general rule in tort cases to be displaced only in extraordinary circumstances". (*Cousins v Instrument Flyers,* 44 NY2d 698, 699.) We find in this case no circumstances warranting a departure from this rule. Where, as here, it is the defendant's standard of conduct that is to be

judged, " 'it is appropriate to look to the place of the tort so as to give effect to that jurisdiction's interest in regulating conduct within its borders' " (*Bing v Halstead,* 495 F Supp 517, 520 [US Dist Ct SDNY]). We hold therefore that the law of Connecticut, not that of New York, is applicable in this case.

Applying Connecticut law, we conclude that partial summary judgment on the issue of liability must still be granted in favor of plaintiff as against Bolliger, Inc., on the issue of the latter's negligence. In Connecticut, "[t]he failure of a bailee to return goods delivered to him raises a presumption that their nonproduction is due to his negligence. *Dejon* v. *Smedley Co.,* 108 Conn. 659, 667, 144 A 473 [1929]." (*Frissell v John W. Rogers, Inc.,* 141 Conn 308, 310, 106 A2d 162, 163.) " ' "This presumption prevails unless and until the bailee proves the actual circumstances involved in the damaging of the property * * * The circumstances which the bailee must prove must be something more than those indicating the immediate cause of the damage. The proof must go so far as to establish what, if any, human conduct materially contributed to that immediate cause" ' " (*Griffin v Nationwide Moving & Stor. Co.,* 187 Conn 405, 409, 446 A2d 799, 802, quoting *Frissell v John W. Rogers, Inc., supra*). Bolliger, Inc., effectively concedes in the affidavit of its president, Stephen Gerard, submitted in opposition to plaintiff's motion for summary judgment, that it has no proof to establish "what, if any, human conduct materially contributed" to the disappearance of the two cartons containing plaintiff's property. As mentioned earlier, despite numerous inquiries attempting to trace the whereabouts of the cartons, and investigations by the police and FBI, no evidence has been discovered that would explain their disappearance, and the matter remains a mystery. Thus, Bolliger, Inc., does not have any evidence that it could submit at a trial sufficient to rebut the presumption of negligence under Connecticut law. (*Cf. Barnett Motor Transp. Co. v Cummins Diesel Engines,* 162 Conn 59, 291 A2d 234.)

As to the damages to which plaintiff would be entitled under Connecticut law, we have concluded that it would be inappropriate to decide that issue on this appeal as a matter of law in the somewhat unusual procedural setting that is presented. None of the parties moved for summary judgment on the issue of damages. More important, plaintiff's motion for partial summary judgment was clearly premised on the theory that New York law would apply, and that under *I.C.C. Metals v Municipal Warehouse Co. (supra)* the unexplained failure to return the stored property established a prima facie case of conversion rendering inapplicable a liability-limiting contractual provision. Accord-

ingly, it is possible that facts were not presented that would be relevant to a determination of plaintiff's right under Connecticut law to recover the value of the unreturned property if that value is in excess of that set forth in the bill of lading. Moreover, the damage issue under Connecticut law was not addressed by any of the parties in their briefs.

Some preliminary observations may be helpful. The relevant section in Connecticut's Uniform Commercial Code (Conn Gen Stats § 42a-7-204 [2]) provides that "[d]amages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable". In *Carter v Reichlin Furriers* (34 Conn S 661, 665, 386 A2 647, 650) it was stated that such a limitation does not "become effective apart from an agreement of the parties found to have been made under ordinary principles of contract law." It further appears, however, that a limitation of liability in a warehouse receipt or bill of lading signed by a businessman is binding as a matter of law in the usual situation. (*See, Griffin v Nationwide Moving & Stor. Co.,* 187 Conn 405, 414-417, 446 A2d 799, 804-805, *supra.*) Notwithstanding this apparently dispositive principle, we believe that plaintiff should be given an opportunity to present additional facts, if there should be any, that would raise a factual issue as to whether there was a legally binding contractual agreement limiting liability.

The issue is further complicated by the circumstances that Bolliger, Inc., was informed at different times and in different ways of specific values assigned by the plaintiff to the stored goods. As a matter of first impression, it seems doubtful that knowledge of such values should enlarge the warehouseman's liability beyond that apparently agreed to in the bill of lading signed by the plaintiff's assignor, but we observe that Bolliger, Inc., appeared to acknowledge its liability for $7,654, the sum set forth in the United States Customs Service Consumption Entry Certificate, the insurance certificate, and the price set forth in the bill of sale. However, we are persuaded that resolution of the issue should be deferred until after the parties have had an opportunity to develop more fully the relevant factual circumstances, if indeed there are relevant facts remaining to be developed, and have had an opportunity to brief the legal issues presented under Connecticut law.

The final issue presented on this appeal is the responsibility, if any, of the Italian corporation Bolliger Transport for the loss

of plaintiff's property in Connecticut by Bolliger, Inc. It was established at the hearing before the Special Referee that the two corporations are separately owned equities. Bolliger Transport uses Bolliger, Inc., as its exclusive destination agent in the United States. Since 1976 Bolliger, Inc., has used the "Bolliger" name (before that it was Intermova, Inc.) and has paid Bolliger Transport royalties for the use of that name.

Bolliger Transport argues the applicability herein of the long-established rule that a carrier's liability in respect to a shipment that it has contracted to transport ceases upon delivery of the shipment in good condition pursuant to the shipper's instructions. (*See, e.g., Tarbell v Royal Exch. Shipping Co.*, 110 NY 170; *Philipp Bros. Metal Corp. v S.S. "Rio Iguazu"*, 658 F2d 30.) Indeed, it is stated in *Tarbell* (at p 182) that if a consignee neglects to accept or receive the goods, the carrier may exempt himself from liability by placing the goods in a warehouse. "When this is done he is no longer liable in any respect, and if they are subsequently lost by the negligence of the warehouseman, the carrier is not liable." A freight forwarder (herein Bolliger Transport) is liable to its shipper (herein Matassi) for loss or damage to the freight exactly as if it were a carrier. (*Chicago, Milwaukee, St. Paul & Pac. R. R. Co. v Acme Frgt.*, 336 US 465, 469.)

Plaintiff does not dispute these principles, but urges that the facts in this case support Special Term's finding that the agency relationship between Bolliger Transport and Bolliger, Inc., did not terminate in May 1979 when Matassi had the property delivered to him from the Bolliger, Inc. warehouse, and then requested the warehouse to pick up and store the goods for him. Aside from the similarity of names of the two entities, and the fact that Bolliger Transport derives royalties from Bolliger, Inc.'s use of the Bolliger name, there is no evidence that Matassi was ever informed of the relationship between the two corporations. When Matassi wrote a letter on January 5, 1979 to Bolliger Transport with instructions to that corporation to hold the property in his name, the letter was answered by Bolliger, Inc., in terms that suggest common ownership and management between the two corporations. The reply letter dated January 18, 1979 sent to Matassi is on a letterhead of "Bolliger, Ltd.," which lists, in addition to Bolliger, Inc.'s Stamford, Connecticut, offices, European offices in Rome, Milan and London. Bolliger Transport is located in Rome. Thus, we find that while there may have been no actual agency relationship between the two corporations after the property was delivered to Matassi and then returned by him to the warehouse, a question of fact as to

Bolliger, Inc.'s apparent authority (or agency by estoppel) to act on behalf of Bolliger Transport is presented which must be resolved at trial. (*See, Bank v Rebold,* 69 AD2d 481, 491-493; Restatement [Second] of Agency § 267; 3 Am Jur 2d, Agency, §§ 73-76; 2 NY Jur 2d, Agency, §§ 84-89.) Accordingly, the plaintiff's motion for partial summary judgment as to the liability of Bolliger Transport should have been denied. We have considered the other points raised by Bolliger, Inc., and find them to be without merit.

The order of the Supreme Court, New York County (Richard Lee Price, J.), entered December 2, 1983, and the order entered October 31, 1983 granting reargument but adhering to a decision already rendered, should be modified, on the law, without costs, to deny plaintiff's motion for partial summary judgment against defendant Bolliger Transport, and the matter remanded for further proceedings against that defendant, and it is directed that Connecticut law shall apply in determining the parties' rights in this action, and otherwise affirmed.

KUPFERMAN, J. P., SULLIVAN and FEIN, JJ., concur.

Orders, Supreme Court, New York County, entered, respectively, on October 31, 1983 and on December 2, 1983, unanimously modified, on the law, without costs and without disbursements, to deny plaintiff's motion for partial summary judgment against defendant Bolliger Transport S.N.C., and the matter remanded for further proceedings against that defendant, and it is directed that Connecticut law shall apply in determining the parties' rights in this action, and otherwise affirmed.