■ WATERWAYS LIMITED, Appellant, et al., Plaintiff, v BARCLAYS BANK PLC, Respondent.—Order, Supreme Court, New York County (Karla Moskowitz, J.), entered November 26, 1990, which granted the motion of defendant to dismiss the complaint, pursuant to CPLR 327, on the ground of *forum non conveniens,* is unanimously reversed, on the law, on the facts, and in the exercise of discretion, the motion is denied, and the complaint is reinstated, with costs.

Waterways Limited (Waterways) and Knightsbridge Hotels, Ltd. (Knightsbridge) are Bermuda corporations, and Knightsbridge currently owns more than 80% of the shares of Waterways.

In February 1988, Waterways borrowed Nine Million Dollars (loan) from Barclays Bank PLC (Barclays), a British

banking corporation, authorized to do business in New York, to refinance a Five Million Dollar first mortgage and to fund the improvement of the Grotto Bay Beach Hotel and Tennis Club (Hotel), located in Hamilton Township, Bermuda. The Hotel is a 200 unit, 21 acre, beachside resort. Pursuant to a management agreement between Knightsbridge and Waterways, from March 1974 until February 14, 1989, Knightsbridge managed the Hotel.

The subject loan was evidenced by, *inter alia,* a Building Loan Agreement (Loan Agreement) and a promissory note (note), executed by Waterways and Barclays, in Barclays' New York office, and both instruments provide that New York law governs. Further, the loan was to be serviced out of Barclays' New York office, and the note was payable there.

Barclays conditioned its making the loan, upon Waterways and Barclays executing a Participation Agreement with Barclays' Bermuda affiliate, Bermuda Commercial Bank Limited (Commercial), and, pursuant to the terms of that Agreement, Commercial purchased a 20% interest in the loan.

Also, in connection with the loan, in Bermuda, Waterways and Barclays executed a mortgage and a debenture, both governed by Bermuda law. The terms of the debenture, *inter alia,* required Waterways to use Commercial for all local banking business of the Hotel in Bermuda, and authorized the appointment of a receiver, in the event of a default by Waterways.

After the closing of the loan, over the course of the next six months, Waterways received more financing from Barclays and Commercial, consisting of a $500,000.00 line of credit from Commercial, and an additional One Million Dollar loan from Barclays, making the total loan amount Ten Million Dollars.

In October 1988, Waterways defaulted on a $100,000.00 principal payment, and thereafter, on December 6, 1988, in Boston, Massachusetts, it is undisputed that Mr. Robert Dowling, Vice President, Barclays, met with representatives of Waterways to discuss the default.

Although denied by Barclays, Waterways and Knightsbridge allege that Barclays agreed to waive the amortization schedule, set forth in the Financing Documents, consisting of, *inter alia,* the Loan Agreement, note, mortgage and debenture, in exchange for advancing the maturity date of the loan to June 1989, Waterways immediately placing the Hotel up for sale, and Waterways prepaying $500,000.00 in interest. Further,

Waterways and Knightsbridge contend that Barclays' waiver was memorialized in a writing, dated December 7, 1988, by Mr. Dowling. Waterways claims that it accepted Barclays' waiver, since it prepaid the $500,000.00 in interest, and put the Hotel up for sale.

The subject $500,000.00 was borrowed by Waterways "from Knightsbridge, which had immediately prior thereto borrowed that sum from the Bank of Bermuda". Further, repayment of the Knightsbridge loan to the Bank of Bermuda was gauranteed by Mr. Ralph O. Marshall, a member of the Bermuda Cabinet, and "[i]n * * * consideration for his personal guaranty, Marshall requested and was granted an option from Waterways to purchase the Hotel for $20,000,000".

Thereafter, on December 22, 1988, Barclays accelerated payment of the loan, and demanded immediate repayment in full, since it claimed that it "discovered additional breaches of the Financing Documents by Waterways, including * * * failure to pay operating bills * * * maintenance of undisclosed operating accounts * * * failure to pay interest, and * * * failure to provide meaningful financial statements".

When Waterways failed to sell the Hotel in January and early February 1989, on February 14, 1989, Barclays appointed a Bermuda resident, as receiver and manager of the Hotel. Subsequently, this receiver closed the Hotel, and sold same to a group of Bermuda investors, headed by Mr. Marshall, for Fifteen and One-Half Million Dollars cash and a One Million Dollar conditional promissory note. Further, the purchasing group suspended the Knightsbridge Hotel management contract, and did not renew same. Thereafter, it is undisputed that, on March 2, 1989, the Waterways' shareholders approved the sale. According to Waterways and Knightsbridge, Barclays and Commercial used the sale proceeds to recoup "the outstanding loan balance, plus all accrued interest and expenses. Since the cost of the receivership plus outstanding trade payables of the Hotel was approximately $3,000,000 almost all of the equity in the Hotel was lost".

By summons and complaint, in November 1989, Waterways and Knightsbridge (plaintiffs) commenced an action against Barclays (defendant) to recover damages, in the Supreme Court, New York County. The complaint, containing two causes of action for breach of contract, alleges in substance, that Barclays breached the December 1988 waiver agreement, discussed *supra,* by wrongfully accelerating the loan payment, and appointing a receiver, and that Barclays wrongfully

caused the suspension of Knightsbridge's Hotel management contract, in order to avoid termination payments. Before answering, defendant moved, pursuant to CPLR 327, to dismiss, upon the ground of *forum non conveniens,* and the Motion Court granted the motion. Plaintiff Waterways appeals.

We held, in *Corines v Dobson* (135 AD2d 390, 391 [1st Dept 1987]), "[t]he rule of forum non conveniens, now codified in CPLR 327, allows a court to stay or dismiss an action when in the interests of substantial justice it should be heard in another forum. The rule rests upon justice, fairness and convenience, and while various objective factors are to be considered, no one factor is controlling. *(Islamic Republic v Pahlavi,* 62 NY2d 474; *Silver v Great Am. Ins. Co.,* 29 NY2d 356.)* The burden is on the defendant challenging the forum to demonstrate relevant private or public interest factors which militate against accepting the litigation. *(Islamic Republic v Pahlavi, supra.)"*

Some of the factors that a Court should consider in determining whether jurisdiction should be retained in New York, include "the difficulties for defendant in litigating the claim in this State, the burden on the New York Courts in entertaining the suit and the availability of another more convenient forum in which plaintiff may obtain redress *(Varkonyi v Varig,* 22 NY2d 333; *Irrigation & Ind. Dev. Corp. v Indag S. A.,* 37 NY2d 522)" *(Banco Ambrosiano v Artoc Bank & Trust,* 62 NY2d 65, 73 [1984]).

It is well established law that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed" *(Gulf Oil Corp. v Gilbert,* 330 US 501, 508 [1947]; *Bata v Bata,* 304 NY 51, 56 [1952]; *Hacohen v Bolliger Ltd.,* 108 AD2d 357, 360 [1985).

Our examination of the record indicates that the plaintiff was not engaged in forum shopping, when it brought this action in New York, since we find that significant events in this case occurred in this State, such as the Loan Agreement and note, which were executed in defendant's New York office, and both documents provided that they were to be governed by New York law, the note is payable in New York, and defendant serviced the loan out of that office. We note that, although defendant is incorporated in the United Kingdom, it is authorized to do business in New York, and its Head Office in North America is located at 75 Wall Street, New York City.

In *Income Fund v Vahlsing* (49 AD2d 724 [1st Dept 1975]), a

case, involving parties who did not do business in this State, where we affirmed the Motion Court's denial of a motion to, *inter alia,* dismiss an action, on the ground of *forum non conveniens,* we stated "the execution of the note * * * took place in New York, and the note itself specifies that it is payable in New York and its terms are to be construed in accordance with the laws of the State of New York. Under these circumstances, both parties' nexus with New York in regard to the subject matter of this suit is sufficient for our courts to retain jurisdiction."

Plaintiff contends that, since there are key witnesses and documents located in defendant's New York office, from which the loan was serviced, which support plaintiff's claim that defendant agreed to a waiver of the amortization schedule, and also support plaintiff's allegation that defendant wrongfully accelerated payment of the loan, it would be unjust to compel plaintiff to bring this action in Bermuda, where the Bermuda Court system does not have the wide range of pretrial discovery techniques available in New York. We have held that a factor justifying a Court's decision to retain an action in New York is that "[k]ey documents are presently located in New York" *(Strain v Seven Hills Assocs.,* 75 AD2d 360, 363 [1st Dept 1980]).

Mr. Gary J. Dischel, President of both plaintiffs, in an affidavit submitted in opposition to defendant's motion, states, in pertinent part, that "[l]acking substantial assets * * * and knowing that all but a few thousand dollars of the proceeds from the [Hotel] sale will be paid out, Waterways and Knightsbridge were required to pursue this action on a contingent fee basis in New York". Since contingent fees are not permitted in Bermuda, plaintiff contends that, due to lack of funds, it will be unable to maintain an action there against defendant. We have held that the burden imposed on a plaintiff, by a transfer of the action to a jurisdiction, barring contingency fees, is a factor in favor of retaining an action in New York *(Corines v Dobson, supra,* at 393).

Applying the legal authority, *supra,* to the facts of the instant case, we do not find any persuasive facts, indicating that the defendant will be unduly prejudiced by having to defend the instant action in this jurisdiction.

Although the Hotel is located in Bermuda, and its sale took place there, we find more important such factors as that the terms of the Loan Agreement and note, executed in New York, are governed by New York law, the note was payable in

this jurisdiction, the loan was serviced out of defendant's New York office, relevant witnesses and documents concerning the transaction are located in New York.

Based upon our analysis, *supra,* we find that the "balance of the considerations of justice, fairness, and convenience clearly favors the [plaintiff]" *(Corines v Dobson, supra,* at 393), and therefore, we further find the Motion Court abused its discretion in granting the defendant's motion to dismiss the complaint, on the ground of *forum non conveniens.*

Accordingly, we reverse and deny the motion. Concur—Sullivan, J. P., Carro, Ellerin, Ross and Asch, JJ.