Metropolitan Partners Fund IIIA, LP v GemCap Lending I, LLC (2024 NY Slip Op 50104(U))

[*1]

Metropolitan Partners Fund IIIA, LP v GemCap Lending I, LLC

2024 NY Slip Op 50104(U)

Decided on January 30, 2024

Supreme Court, New York County

Borrok, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 30, 2024
Supreme Court, New York County

Metropolitan Partners Fund IIIA, LP, Series F&F of Metropolitan Partners Fund IV, LLC, Series Institutional of Metropolitan Partners Fund IV, LLC, Metropolitan Equity Partners Administration, LLC, Metropolitan Equity Partners Management, LLC, Plaintiff,

against
GemCap Lending I, LLC, MidCap Funding XVIII Trust, MidCap Financial Services, LLC, GemCap Solutions, LLC, Richard Ellis, David Ellis, Defendant.

Index No. 656325/2020

Plaintiffs by: 
PROVENZANO GRANNE & BADER LLP, 1330 Avenue Of The Americas Ste 23a, New York, NY 10019
Defendants by:
Raymond L. Vandenberg, Esq., 277 West End Avenue Apartment 4b, New York, NY 10023
VEDDER PRICE P.C., 1633 Broadway Fl 31, New York, NY 10019
Glenn Agre Bergman & Fuentes LLP, 1185 Avenue Of The Americas 22nd Floor, New York, NY 10036

Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 010) 242, 243, 244, 262, 263 were read on this motion to/for STAY.
The following e-filed documents, listed by NYSCEF document number (Motion 011) 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 287, 291, 299, 300, 301, 302 were read on this motion to/for MISCELLANEOUS.
The following e-filed documents, listed by NYSCEF document number (Motion 012) 279, 280, 281, 282, 283, 284, 285, 286, 288, 289, 290, 292, 293, 294, 295, 296, 297, 298 were read on this motion to/for DISMISS.
Upon the foregoing documents and for the reasons discussed on the record (1.25.24) and [*2]as otherwise set forth below, (i) the Defendants' Motions (Mtn. Seq. Nos. 010, 012) seeking a stay and dismissal are denied and the Plaintiffs' cross-motion seeking sanctions pursuant to Rule 130 for frivolous conduct is held in abeyance pending the production of documents wrongfully withheld by the Defendants and the Defendant's response as set forth below and (ii) the Plaintiffs' motion for disclosure penalties (Mtn. Seq. No. 011) and seeking certain facts to be deemed admitted is granted to the extent that the Defendants must produce the relevant documents as set forth below no later than February 8, 2024 (as discussed on 1.25.24), and certain factual issues set forth below are deemed resolved in Plaintiffs' favor.
The Relevant Facts and Circumstances
The Defendants represent to this Court that there is no connection to New York and Jurisdiction is Improper
Reference is made to (i) a Decision and Order of this Court, dated January 25, 2022 (the 2022 Decision; NYSCEF Doc. No. 113) and (ii) a Decision and Order of this Court, dated September 1, 2023 (the 2023 Decision; NYSCEF Doc. No. 236).
In the 2022 Decision, the Court denied GemCap Lending I, LLC (Gem Cap 1)'s motion to dismiss, holding that the Plaintiffs' First Amended Complaint alleged facts sufficient to demonstrate that this Court had specific jurisdiction over GemCap 1 pursuant to CPLR 302 based on the allegations that GemCap 1 had defrauded Plaintiff in New York by actively concealing its deliberate attempt to violate the provisions of several agreements to which Plaintiff was a party (NYSCEF Doc. No. 113 at 1). In addition, this Court held that the Plaintiffs had made a sufficient start to warrant jurisdictional discovery as to whether GemCap 1 was subject to general jurisdiction in New York pursuant to CPLR 301 (id.). As discussed below, recent evidence adduced by the Plaintiffs indicating that GemCap 1 did maintain an office in New York has only further established that a basis for general jurisdiction under CPLR 301 exists.
Throughout the entire span of this litigation however, as detailed below, the Ellis Brothers as the "principals" of GemCap 1 (NYSCEF Doc. Nos. 293, ¶ 6; 298 ¶ 6) have repeatedly and apparently falsely sworn to this Court under the penalty of perjury that GemCap 1 never maintained an office in New York.
For example, in support of GemCap 1's first motion to dismiss (NYSCEF Doc. No. 16), Defendant Richard Ellis stated in his March 31, 2021 affirmation:
4. GemCap does not, and has not, maintained a physical address in New York
(NYSCEF Doc. No. 17, ¶ 4).
Defendants' first motion to dismiss was rendered moot by Plaintiff's filing of their First Amended Complaint, which Defendants also moved to dismiss.
In his affirmation dated August 15, 2021, submitted in support of GemCap 1's motion to dismiss Plaintiffs' First Amended Complaint (NYSCEF Doc. No. 44), Defendant Richard Ellis stated:
2. GemCap Lending I, LLC ("GemCap") is a Delaware limited liability company with its principal place of business in California. GemCap does not regularly conduct business in New York.
3. GemCap does not own, use or possess any property in New York.
4. GemCap does not, and has not, maintained a physical address in New York
(NYSCEF Doc. No. 79, ¶¶ 2-4).
After the 2022 Decision denied GemCap 1's motion to dismiss the First Amended [*3]Complaint, GemCap 1 stopped participating in this action. GemCap 1's counsel, without withdrawing, stopped appearing at status conferences, and allegedly refused to respond to Plaintiffs' counsels' emails or phone calls (NYSCEF Doc. No. 246, ¶ 149). On February 3, 2022, this Court entered default judgment against GemCap 1 awarding Plaintiffs over $6 million, plus interest and fees as against GemCap 1 (NYSCEF Doc. No. 119).
The Sham Transaction: the Defendants set up GemCap 2 to Avoid GemCap 1's Liability
Subsequently, the Plaintiffs produced evidence indicating GemCap 1 was seeking to avoid its liability to the Plaintiffs by (i) shutting its doors and transferring its assets to the newly-formed GemCap Solutions, LLC (GemCap 2) which was being operated as a successor company, and (ii) declaring bankruptcy without listing Plaintiffs as judgment creditors. Thus, by Decision and Order (NYSCEF Doc. No. 176), dated December 1, 2022, this Court granted the Plaintiffs leave to file their Second Amended Complaint (the SAC), naming the Ellis Brothers and GemCap 2 as Defendants as the Ellis Brothers were allegedly manipulating corporate forms to further defraud the Plaintiffs.
The Defendants then moved to dismiss the SAC. In his affidavit dated January 18, 2023, submitted in support of GemCap 2's motion to dismiss Plaintiffs' SAC (NYSCEF Doc. No. 181), Defendant David Ellis stated:
3. I am currently a Texas resident. At all times relevant to this action, I resided in California and Texas, and have never resided in New York. I do not conduct any business in New York, nor have I committed any act within New York that could give rise to the causes of action at issue in the SAC, in either my personal or professional capacity.
4. I do not maintain any personnel, bank accounts, real or personal property, sales, offices, or agents in New York. I do not solicit business in New York, nor do I personally collect substantial revenue from New York State, or interstate or international commerce.
5. As a member of GemCap II, LLC, which is a member of GemCap Solutions, I can competently attest that GemCap Solutions does not conduct any business in New York, nor has it committed any act within New York that could give rise to the causes of action at issue in the SAC. In fact, GemCap Solutions did not yet exist at the time of the challenged conduct underlying the SAC.
6. GemCap Solutions' principal place of business is in Texas. None of the companies it has invested with are located in New York, and it has never closed a loan in New York. GemCap Solutions does not maintain any personnel, bank accounts, real or personal property, sales, offices, or agents in New York. GemCap Solutions does not solicit business in New York, nor does it collect substantial revenue from New York State, or interstate or international commerce
(NYSCEF Doc. No. 203, ¶¶ 3-6).
In his affidavit dated January 18, 2023, also submitted in support of GemCap 2's motion to dismiss Plaintiffs' SAC (NYSCEF Doc. No. 181), Defendant Richard Ellis similarly stated:
3. I am currently a Texas resident. At all times relevant to this action, I resided in California and Texas, and have never resided in New York. I do not conduct any business in New York, nor have I committed any act within New York that could give rise to the causes of action at issue in the SAC, in either my personal or professional capacity.
4. I do not maintain any personnel, bank accounts, real or personal property, sales, offices, or agents in New York. I do not solicit business in New York, nor do I personally collect substantial revenue from New York State, or interstate or international commerce.
5. As a member of GemCap II, LLC, which is a member of GemCap Solutions, I can competently attest that GemCap Solutions does not conduct any business in New York, nor has it committed any act within New York that could give rise to the causes of action at issue in the SAC. In fact, GemCap Solutions did not yet exist at the time of the challenged conduct underlying the SAC.
6. GemCap Solutions' principal place of business is in Texas. None of the companies it has invested with are located in New York, and it has never closed a loan in New York. GemCap Solutions does not maintain any personnel, bank accounts, real or personal property, sales, offices, or agents in New York. GemCap Solutions does not solicit business in New York, nor does it collect substantial revenue from New York State, or interstate or international commerce
(NYSCEF Doc. No. 204, ¶ 3-6).
In the 2023 Decision, the Court rejected the Defendants' arguments that the allegations against the Ellis Brothers and GemCap 2 should be dismissed based on lack of personal jurisdiction and the failure to state a claim and granted the motion solely to the extent of dismissing the cause of action sounding in tortious interference without prejudice set forth in the SAC. As discussed in the 2023 Decision, the Defendants are alleged to have led an effort to slash and burn GemCap 1 and set up GemCap 2 via a "strict foreclosure" transaction solely for the purpose of avoiding liability to the Plaintiffs while otherwise carrying on their business just as it had been carried out previously. As such, in the 2023 Decision this Court held, among other things, that GemCap 2 is alleged to have inherited GemCap 1's jurisdictional status as the mere continuation of its predecessor (NYSCEF Doc. No. 236 at 9) and otherwise dismissed the claim asserting tortious interference without prejudice so that the Plaintiffs could clarify certain factual allegations.
Subsequently, the Plaintiffs filed a Third Amended Complaint (the TAC; NYSCEF Doc. No. 246). In the Plaintiffs' well pled TAC, the Plaintiffs allege that:
1. This action arises from a complex multi-party lending deal that would ultimately involve the defendants in a scheme that cheated Metropolitan out of millions of dollars.
2. Defendants GemCap Lending I, LLC ("GemCap 1") and its principals, brothers Richard and David Ellis (together, the "Ellis Brothers"), together with borrower Encore (as defined below), came up with a scheme to improve their financial position at Metropolitan's expense, and then deceived Metropolitan so that it would not discover what they had done until it was too late.
3. When GemCap 1 later defaulted on its debt to its own senior lender, MidCap (as defined below), the defendants engineered a transaction in which MidCap acquired GemCap 1's performing loans and the Ellis Brothers walked away debt-free with everything they needed to continue their business. Metropolitan, of course, received nothing.
4. GemCap 1 and MidCap accomplished this through a "strict foreclosure" in which MidCap acquired GemCap 1's assets in full satisfaction of its debt—but not all of GemCap 1's assets. In a side deal, negotiated before the foreclosure, the Ellis Brothers promptly took back everything they needed to continue their business, which they did a few months later through a new company, GemCap Solutions, LLC ("GemCap 2"). They didn't even bother to pretend it was a different business. Just the opposite, in fact. To capitalize on the goodwill of the "predecessor" and with the same management, GemCap [*4]2 continued to do business as "GemCap." It used the same website, phone numbers, email addresses, and pretty much everything else. The effect of the "foreclosure" was that MidCap took the few assets they wanted and left the Ellis Brothers to continue along as before.
5. GemCap 2 now owns (and uses) GemCap 1's name, trademarks, logos, URL, client lists, and business assets, and holds itself out to the public as the same "GemCap." There is no doubt but that GemCap 2 should be treated as a mere successor to GemCap 1.
6. Metropolitan obtained judgment against former defendants Encore Park Fund 1, LLC ("EPF1"), Encore Holdings, LLC ("Holdings"), and Encore Automotive Acceptance Corporation ("EAAC" and, together with EPF1 and Holdings, "Encore") in a separate action, since consolidated with this one. See Index No. 656327/2020, Doc. No. 18. Metropolitan has voluntarily discontinued this action (and only this action, not the related "327" action) against Encore and its officers Richard L. Collins and Eric Nordlund. See Doc. No. 167. Metropolitan retains its judgment in the related action.
7. Metropolitan also has a judgment against GemCap 1. See Doc. No. 150. GemCap 1 appeared in this action by counsel, moved to dismiss the claims against it on the ground of lack of personal jurisdiction, lost, and then disappeared without counsel ever withdrawing. As Metropolitan sought information to enforce its judgment against GemCap 1, the Ellis Brothers would further demonstrate their wrongful purpose by actively avoiding service in Texas and filing a materially false (and possibly criminal) bankruptcy petition.
8. The sole question as to GemCap 2 is therefore whether it may equitably be required to answer for the judgment against GemCap 1. This complaint states facts pertaining to GemCap 1 prior to the judgment to the extent that they are necessary to understand the scheme and the remaining claims.

 * * *
68. In addition to defrauding Metropolitan, GemCap 1 and the Ellis Brothers tortiously caused Encore (including EPF 1 and EAAC) to violate numerous contractual obligations to Metropolitan. Further, the Ellis Brothers caused GemCap 1 to violate the contractual obligations it assumed when it stepped into Park's shoes. This conduct constitutes tortious interference with Metropolitan's contractual relations. In particular:
a. On information and belief, the Ellis Brothers were the sole control persons of GemCap 1. They made all management decisions together on behalf of GemCap 1 (and later GemCap 2), and Metropolitan is unaware of any other person who exercised managerial control over these entities. Further, once GemCap 1 stepped into Park's shoes and effectively became Encore's sole senior lender, they dominated Encore and caused it to take numerous actions in violation of its agreements.
b. The Ellis Brothers and GemCap 1 caused Encore to violate various provisions of the LSA between Encore and Metropolitan, including by breaching undertakings as to the quality of Contracts purchased, violating notice provisions, violating reporting provisions, falsifying reporting, incurring unauthorized debt, failing financial covenants and, on the most basic level, simple nonpayment of the debt.
c. The Ellis Brothers, for their personal benefit, also caused both Encore and GemCap 1 (then standing in Park's shoes) to breach numerous agreements involving Metropolitan.
d. The Ellis Brothers caused Encore (and GemCap 1) to breach Section 3.5 of the Park-[*5]Met Intercreditor Agreement, which provided that "Borrower agrees that it will not submit, and Park agrees that it will not honor, an advance request for the purchase of additional Contracts unless the Funding Certificate or Borrowing Base Certificate shows an availability reserve approved by Metropolitan in accordance with the terms of the Subordinated Debt Documents." (Emphasis added.) By causing "Borrower" (that is, Encore) to submit such requests, the Ellis Brothers and GemCap 1 both tortiously caused Encore to violate this agreement and, in Park's shoes, themselves violated this agreement, to the detriment of Metropolitan.
e. The Ellis Brothers also caused GemCap 1 to breach Section 1.1 of the Park-GemCap-Met Intercreditor Agreement, which provides, in the definition of "Consent," that in connection with each transfer of Contracts from EAAC to EPF1, GemCap must deliver a Consent to Assignment of Receivables, Release of Lien and Payment Direction to both Park and Metropolitan. The form of Consent, which is attached as Exhibit A to the Park-GemCap-Met Intercreditor Agreement, specifically states that it is "to and for the benefit of" Encore, Park, and Metropolitan.
f. Perhaps most significant is that the Ellis Brothers caused both GemCap 1 (standing in Park's shoes) and Encore to breach the Runoff Agreement, by causing them to increase the size of the Senior Debt Facility and to combine the EAAC and EPF1 portfolios without the consent of or even notice to Metropolitan.
g. Eric Nordland's deposition transcript makes the central role of the Ellis Brothers clear. Among other things, Nordland, the CEO of Encore, indicated that, when he asked the Ellis Brothers whether all required notification had been given to Metropolitan, they falsely assured him that they had done so. Similarly, the Ellis Brothers caused him to provide the materially inaccurate reporting that would be furnished to Metropolitan in New York and on which Metropolitan relied, causing Metropolitan not to discover the fraud for many months. And, the Ellis Brothers falsely assured Nordlund and Encore that the transaction they and GemCap 1 had engineered was permitted by the controlling documents.

 * * *
84. Encore, GemCap 1, and the Ellis Brothers knew and intended that Metropolitan would rely on this false reporting, and that it would cause injury in New York, including by extending the maturity of the Notes and causing Metropolitan to forbear from exercising its remedies. GemCap 1 and the Ellis Brothers were therefore joint tortfeasors with respect to Encore.
a. The Ellis Brothers' conduct in perpetuating this scheme also constituted tortious interference with Metropolitan's contractual relationship with Encore, separate and apart from their initial tortious interference in connection with the January 2019 transactions. Throughout the period after the portfolios were combined, the Ellises deliberately caused Encore to provide misleading reporting to Metropolitan and thus to violate Section 6.20 of the LSA, which required Encore to submit monthly certified statements that Encore was in compliance with the terms of the LSA as well as a Borrowing Base Report, also certified by Encore as true, correct, and complete.
b. Here too Nordland's deposition transcript shows the Ellis Brothers' scheme to interfere with Encore's performance of the LSA. Nordlund testified that "[p]ost the transaction, the large report [showing the combined portfolios] was sent via GemCap's system. The [*6]report that we had always given them historically that showed the original balance was sent to Metropolitan." (Emphasis added.)
(NYSCEF Doc. No. 246, ¶¶ 1-8, 68[a]-[g], 84[a]-[b]).
The Defendants' Prior False Statements to the Court are Revealed
In response to the TAC, the Defendants again move to dismiss for essentially the same reasons that the Court previously rejected. With respect to personal jurisdiction, the Plaintiffs have adduced evidence which only provides further support for the Court's prior decisions. 
To wit, the Plaintiffs have proffered both (i) an Amendment to an Executive Management Agreement (NYSCEF Doc. 290), dated July 31, 2020, indicating that GemCap 1's principal address was 375 Park Avenue, Suite 3304, New York, New York 10152 in New York and (ii) the original Limited Liability Company Application for Registration of GemCap 1 (NYSCEF Doc. No. 320), dated June 18, 2008, filed with the State of California indicating that GemCap 1's principal executive office was located at 767 Fifth Avenue, New York, New York 10153 — also in New York.
Notably, in his affidavit dated November 2, 2023, submitted in support of this motion to dismiss the TAC (NYSCEF Doc. No. 246), Defendant David Ellis stated:
7. GemCap Lending has always been located in California. Its website has only ever listed its current Malibu address, as well as its previous addresses in Santa Monica and Century City, California.
8. GemCap Lending has never employed any personnel in New York, and has never leased offices in New York.
(NYSCEF Doc. No. 298, ¶¶ 7-8).
In his affidavit dated November 2, 2023, submitted in support of this motion to dismiss the TAC (NYSCEF Doc. No. 246), Defendant Richard Ellis similarly stated:
7. GemCap Lending has always been located in California. Its website has only ever listed its current Malibu address, as well as its previous addresses in Santa Monica and Century City, California.
8. GemCap Lending has never employed any personnel in New York, and has never leased offices in New York.

 * * *
11. On July 31, 2020, Medley's offices were located at 375 Park Avenue, Suite 3304, New York, New York 10151. Medley's offices are currently located at the same address. GemCap Lending has never had any offices at this address or at any address in New York.

 * * *
18. GemCap Lending's headquarters has always been in California — that has never changed. The company has never had any offices or employees in New York
(NYSCEF Doc. No. 294, ¶¶ 7-8, 11, 18). 
In other words, the Plaintiffs have now adduced evidence which indicates that GemCap 1 had offices in New York in 2008 and 2020 which directly contradicts a number of sworn affidavits filed with this Court for the purpose of falsely suggesting dismissal is appropriate based on lack of personal jurisdiction. The problem here is further compounded by the fact that the Defendants have frustrated discovery by failing to produce relevant documents and otherwise admit that they spoliated evidence (i.e., physical documents of GemCap 1) which they were required to retain because they acknowledged themselves that litigation was anticipated prior to [*7]their purposeful or grossly negligent abandonment of such physical documents.
The Spoliation
As discussed further below, it appears that there was a litigation hold at the latest as of August 28, 2020, because the Defendants identified this looming litigation on Schedule 8.2.1 to a strict foreclosure agreement dated as of that date (NYSCEF Doc. No. 252) and that after the strict foreclosure described above, the Defendants either purposefully or grossly negligently caused documents to be destroyed or abandoned in furtherance of their scheme to avoid obligations to these Plaintiffs and to conceal the connection between GemCap 2 and GemCap 1 and Mssrs. Ellis' personal involvement in this obfuscation.
To be clear, the Defendants' position is that (i) despite their admitted knowledge of this looming litigation in their own documents, that since they were not served with a document preservation hold notice, they should not be penalized for their admitted failure to retain documents (NYSCEF Doc. 299 at 2) and (ii) GemCap 2 "agreed to produce all relevant documents in their possession, custody, and control, and properly objected to requests seeking documents in, among others, GemCap Lending's possession, as GemCap Solutions is not GemCap Lending's successor and does not have access to GemCap Lending's files" (id. At 2-3). However, and as discussed above, in their interrogatory responses, the Defendants admit that certain physical evidence has likely been lost entirely by Gemelli Group, LLC, which acquired certain assets from GemCap 1 during the "strict foreclosure" transaction:
c. Gemelli Group, LLC ("Gemelli Group") is no longer in possession of the Foreclosed Equipment. Gemelli Group abandoned or disposed of the Foreclosed Equipment,abandoning all or the majority of the Foreclosed Equipment at 24955 Pacific Coast Highway, Malibu, CA 90265. Gemelli Group is no longer in possession of the Foreclosed Intellectual Property. On June 28, 2021, Gemelli Group assigned the Foreclosed Intellectual Property to GemCap II, LLC, Basy Ventures, LLC, MFG Holding FZ — LLC, and Annie O'Connor. On the same date, GemCap II, LLC, Basy Ventures, LLC, MFG Holding FZ — LLC, and Annie O'Connor assigned the Foreclosed Intellectual Property to GemCap Solutions, LLC.
d. GemCap Solutions, LLC has ownership of the Foreclosed Intellectual Property. Gemelli Group abandoned the Foreclosed Equipment and the physical location is unknown.
e. Richard Ellis and/or David Ellis do not have ownership, possession, custody or control over the Foreclosed Equipment or the Foreclosed Intellectual Property
(NYSCEF Doc. No. 302 at 3).
This is not the law. These recent revelations (i.e., the fact the Defendants have brazenly submitted false affidavits to this Court and otherwise admitted that they purposefully or grossly negligently failed to retain all relevant documents at a time when they themselves recognized that this litigation was looming) are extremely troubling and require sanction. In fact, the only issue is the degree of sanction that should be imposed.

 Discussion
I. Defendants' Request for a Stay is Denied
The Defendants argue that they disagree with the Court's 2023 Decision but do not otherwise present any compelling reason why proceeding with discovery pending their appeal would constitute prejudice different than the appeal of the denial of any other motion to dismiss. The cases they rely on, Van Amburgh v Curran, 73 Misc 2d 1100, 1100 (Sup Ct 1973) [*8](dismissing a petition to modify a subpeona), or denying a motion to quash a subpoena (First City, Texas-Houston, N.A. v Rafidain Bank, 131 F Supp 2d 540, 543 [SDNY 2001]), are inapposite and do not present any compelling reason to grant the motion for a stay in this case.
In fact, given the circumstances of this case, it is the Plaintiffs who would be substantially prejudiced were they to be required to wait any further in obtaining material and necessary discovery relevant to their claims.
As discussed above, in the 2023 Decision, among other things, the Court denied the Defendants' motion to dismiss to the extent of holding that Richard Ellis and David Ellis and GemCap 2 are subject to this Court's personal jurisdiction and did not dismiss Plaintiffs' claims for fraud and unjust enrichment. If GemCap 1 was merely continued by GemCap 2, as alleged and as appears to be the case, GemCap 2 inherited GemCap 1's jurisdictional status and (as discussed further below) is also subject to the consequences of any spoliation of evidence in furtherance of this alleged scheme.
Mssrs. Ellis were the principals of GemCap 1 until their "resignations" in 2020 (NYSCEF Doc. Nos. 293, ¶ 6; 298, ¶ 6). The registration to do business filed with the State of California (NYSCEF Doc. No. 320, exhibit A) constitutes prima facie evidence that they maintained an office in New York and are thus subject to general jurisdiction under CPLR 301, and otherwise further corroborates the holding that they and the other Defendant affiliates who did business in New York are subject to jurisdiction under CPLR 302 as to the tortious conduct allegedly committed in New York. GemCap 1, which is a Delaware company, could well have listed Corporation Service Company in Delaware as its agent for the purpose of service of process, but instead listed 767 Fifth Avenue, New York, New York 10153 as its principal executive office. This matters.
Worse, as detailed above, it would appear that Mssrs. Ellis have submitted perjurious affidavits to this Court. Given that Plaintiffs have for some time been requesting documents relevant to their contention that GemCap 2 is the mere continuation of GemCap 1 created to continue Mssrs. Ellis' business and is subject to jurisdiction in New York, a contention that is at the very heart of this controversy, the potential that the Defendants have spoliated and/or given perjurious evidence relevant to that contention is monstrously prejudicial to Plaintiffs. Any further delay occasioned by a stay would only worsen the harm already caused.
II. Defendants' Motion to Dismiss is Denied
A. Tortious Interference
A cause of action for tortious interference with contract requires a plaintiff to demonstrate (i) the existence of a valid contract between the plaintiff and a third party, (ii) the defendant's knowledge of that contract, (iii) the defendant's intentional procurement of the third-party's breach of the contract without justification, (iv) actual breach of the contract, and (v) damages resulting therefrom (330 Acquisition Co., LLC v Regency Savings Bank, F.S.B., 293 AD2d 314, 315 [1st Dept 2002]).
The Plaintiffs contend that the series of breaches detailed above (NYSCEF Doc. No. 246, 68[a]-[g], 84[a]-[b]) harmed them by (i) diminishing the credit quality of EPF1's portfolio, (ii) increasing the Plaintiffs' exposure to higher-risk loans in EAAC's portfolio, and (iii) increasing debt senior to the Plaintiffs in EPF1's portfolio (id., ¶¶ 65-67). Taking the above as true as the Court must at this stage of the litigation, this is sufficient and the motion must be denied.
B. Forum Non Conveniens
Mssrs. Ellis and GemCap 2 argue that dismissal on the grounds of forum non conveniens [*9]is appropriate because, according to the Defendants, (i) the Defendants are not citizens or residents of New York, (ii) the Defendants do not maintain an office in New York nor conduct business in the State, (iii) the Plaintiffs' claim arises from conduct occurring outside of New York, (iv) most witnesses and documents are located outside New York, and (v) the intercreditor agreement is governed by Ohio law. The argument fails.
In performing a forum non conveniens analysis, courts balance various factors, including (i) the burden on New York courts, (ii) the potential hardship to the defendants, (iii) the unavailability of an alternative forum, (iv) the residence of the parties, and (v) where the transaction at issue occurred (Islamic Republic of Iran v Pahlavi, 62 NY2d 474, 479 [1984]). The defendant bears a heavy burden of demonstrating that New York is not a convenient forum (Bank Hapoalim [Switzerland] Ltd. v Banca Intesa S.p.A., 26 AD3d 286, 287 [1st Dept 2006]) and the plaintiff's choice of forum should rarely be disturbed, and only where the balance is strongly in favor of the defendant (Waterways Ltd. v Barclays Bank PLC, 174 AD2d 324, 327 [1991]). The plaintiff's residence is generally the most significant factor in a forum non conveniens analysis (Sweeney v Hertz Corp., 250 AD2d 385, 386 [1st Dept 1998]).
In this case, each of the Plaintiffs' principal place of business is in New York (NYSCEF Doc. No. 246, ¶ 13). There is very little burden on this Court (now three years into this litigation) in adjudicating the dispute which this Court is well familiar with, and the commercial division regularly applies the laws of other jurisdictions. Although there has been very little discovery in this case (primarily because the Defendants have either frustrated discovery or otherwise spoliated evidence by their own admission), there nevertheless has been "significant activity" and the Defendants should not under the circumstances be rewarded by forcing the Plaintiffs to litigate elsewhere (Corines v Dobson, 135 AD2d 390, 392 [1st Dept 1987]). Equally importantly, as alleged GemCap 2 inherited GemCap 1's jurisdictional status and Mssrs. Ellis purposefully availed themselves of the benefits of New York and caused breaches of the intercreditor agreement in New York (NYSCEF Doc. No. 236 at 10-11). Having done this, they cannot now claim New York is inconvenient. Thus, the branch of the motion seeking dismissal based on forum non conveniens is denied.
C. Defendants' Remaining Arguments as to the TAC
The Defendants' remaining arguments regarding this Court's personal jurisdiction over Mssrs. Ellis and GemCap 2, and Plaintiffs' claims for fraud and unjust enrichment, have already been considered by this Court in the prior decisions. Thus, for the same reasons as set forth in the prior decisions, the remainder of the Defendants' motion based on lack of personal jurisdiction and for failure to state a claim as to the other causes action set forth in the well pled TAC is denied.
III. Plaintiffs' Requests for Sanctions, Disclosure Penalties
In response to the Defendants' latest motion to dismiss, the Plaintiffs cross-move for sanctions pursuant to 22 NYCRR 130-1.1(c), alleging that Defendants have repeatedly and falsely asserted to this Court that the Defendants have never maintained an address or place of business in New York, and have engaged in other conduct primarily aimed at delaying the resolution of this case (NYSCEF Doc. No. 289 at 17-18). The Plaintiffs therefore request an award of attorney's fees in connection with defending this and the Defendants' prior motions to dismiss.
The Plaintiffs also move by order to show cause pursuant to CPLR 3126 to have certain factual issues deemed resolved in their favor as a penalty for the Defendants' alleged failure to [*10]comply with their discovery demands, to recover their costs and attorney's fees in connection with this motion, and to have an additional monetary sanction imposed against Defendants (NYSCEF Doc. No. 287). 
A. Sanctions Pursuant to 22 NYCRR 130-1.1(c)
New York Court Rules § 130-1.1 provides that:
(a) The court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct as defined in this Part. In addition to or in lieu of awarding costs, the court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct as defined in this Part, which shall be payable as provided in section 130-1.3 of this Part. This Part shall not apply to town or village courts, to proceedings in a small claims part of any court, or to proceedings in the Family Court commenced under Article 3, 7 or 8 of the Family Court Act.
(b) The court, as appropriate, may make such award of costs or impose such financial sanctions against either an attorney or a party to the litigation or against both. Where the award or sanction is against an attorney, it may be against the attorney personally or upon a partnership, firm, corporation, government agency, prosecutor's office, legal aid society or public defender's office with which the attorney is associated and that has appeared as attorney of record. The award or sanctions may be imposed upon any attorney appearing in the action or upon a partnership, firm or corporation with which the attorney is associated.
(c) For purposes of this Part, conduct is frivolous if:

 * * *
(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
(3) it asserts material factual statements that are false.
Frivolous conduct shall include the making of a frivolous motion for costs or sanctions under this section. In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the (1) circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct; and (2) whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.
(d) An award of costs or the imposition of sanctions may be made either upon motion in compliance with CPLR 2214 or 2215 or upon the court's own initiative, after a reasonable opportunity to be heard. The form of the hearing shall depend upon the nature of the conduct and the circumstances of the case
(NYCRR 130-1.1).
In support of their motion, the Plaintiffs adduce (NYSCEF Doc. No. 290) an Amendment No. 1 to Executive Management Agreement, dated July 31, 2020, "by and between GEMELLI GROUP, LLC, a Texas limited liability company having an address of 10685-B Hazelhurst Rd., #16793, Houston Texas 77043 (hereinafter referred to as the "Executive Manager") and GEMCAP LENDING I, LLC, D/B/A GEMCAP, a Delaware limited liability company having its [*11]principal office at 375 Park Avenue, Suite 3304, New York, New York 10151." This, the Plaintiffs argue, is directly at odds with the Defendants' prior statements that the Defendants in this case did not maintain an office in New York. In their reply papers, the Defendants indicate that this must have been a scrivener's error because the agreement was signed on GemCap 1's behalf by its equity investors Medley Opportunity Fund II LP, MOF Holdings LLC, and MOF II Management LLC, which the Defendants say in their personal affidavits sworn under penalties of perjury must have unintentionally put their own address in the agreement in place of GemCap 1's (NYSCEF Doc. No. 292 at 8-9). In support of their position, the Defendants adduce an Executive Management Agreement (NYSCEF Doc. No. 294), dated as of June 29, 2020 (i.e., one month earlier), by and between "GEMELLI GROUP, LLC, a Texas limited liability company having an address of 10685-B Hazelhurst Rd., #16793, Houston Texas 77043 (hereinafter referred to as the "Executive Manager") and GEMCAP LENDING I, LLC, D/B/A GEMCAP, a Delaware limited liability company having its principal office at 24955 Pacific Coast Highway, Suite A202, Malibu CA 90265."[FN1]

By letter submission following the briefing of this motion (upon permission of the Court), the Plaintiffs adduce a Limited Liability Company Application for Registration (NYSCEF Doc. No. 320), dated June 18, 2008, filed with the California Secretary of State, which also indicates that GemCap 1's principal executive office was in New York. This document indicates that GemCap 1's principal address in New York was 767 Fifth Avenue, New York, New York, 10153.
At oral argument (1.25.24), counsel to the Defendants represented that his understanding was that the address listed was that of GemCap 1's primary equity holder at that time (a different address than the address in the Management Agreement but also a New York address), that GemCap 1 never worked out of these offices, and that the Ellis Brothers were unaware of this filing until its production by Plaintiffs.
Even if true, this is wholly without legal significance as to the jurisdictional issue argued by the Defendants. If GemCap 1 used its equity owner's offices in New York (as is demonstrated by the filing), GemCap 1 would be subject to general jurisdiction in New York pursuant to CPLR 301.
However, and before deciding on appropriate sanction in respect of the admitted spoliation discussed below, the Defendants no later than February 8, 2024 (i.e., within two weeks of the date of oral argument) (i) shall (a) produce all of the errant e-discovery and the metadata associated with such discovery together with an appropriate privilege log and (b) submit an appropriate sworn affidavit within two weeks responding to these serious allegations and (ii) may submit a letter no longer than three pages in length indicating what, if any, sanction they believe is appropriate under the circumstances.
B. Disclosure Penalties Pursuant to CPLR 3126
As discussed above, the Plaintiffs allege that the Defendants led an effort to slash and [*12]burn GemCap 1 and set up GemCap 2 to avoid liability to Plaintiffs. Now, the Plaintiffs allege this same effort is being used by Mssrs. Ellis and GemCap 2 to avoid their discovery obligations. Most significantly, Plaintiffs allege that the Mssrs. Ellis and GemCap 2 deny possession of various materials that, according to an uncontested chain of custody, passed from GemCap 1 to GemCap 2. Plaintiffs therefore request that this Court issue an Order awarding Plaintiffs costs and attorneys' fees, imposing a monetary sanction, and resolving certain factual issues in their favor, to wit:
1. Deeming defendant GemCap 2 to be the corporate successor to GemCap Lending I, LLC, ("GemCap 1") consistent with the allegations of the complaint for purposes of this action; and
2. Deeming the GemCap 2 Defendants to regularly do or solicit business within the state, to derive substantial revenue from interstate commerce, and to have reasonably expected their conduct to have consequences within the state, consistent with the allegations of the complaint for purposes of this action; and
3. Deeming the issue of whether the GemCap 2 Defendants knew and intended that the plaintiffs would rely on the materially false financial information provided to the plaintiffs in this action (collectively "Metropolitan") to be resolved consistent with the allegations of the complaint for purposes of this action; and
4. Disallowing the GemCap 2 Defendants from introducing any evidence that should have been disclosed pursuant to any disclosure devices propounded by Metropolitan to which the GemCap 2 Defendants failed to make a proper response.
5. Entitling Metropolitan to recover costs and attorneys' fees in connection with this motion and with the disclosure they have made consistent with the demands of the GemCap 2 Defendants; and
6. Subjecting the GemCap 2 Defendants to an additional monetary sanction of $ ______________
(NYSCEF Doc. No. 287 at 2-3).
As discussed in the 2023 Decision, GemCap 1 and Mssrs. Ellis, in collaboration with their lender, MidCap, engineered a "strict foreclosure" of GemCap 1, in which GemCap 1 was stripped of its assets and various of these assets were placed into the newly-formed GemCap 2 (NYSCEF Doc. No. 236 at 5-6). As relevant here, those assets included email addresses, email content, and forms and documents used in the ordinary course of GemCap 1's business (id.). This chain of custody is documented in Exhibit A-2 of the strict foreclosure agreement (NYSCEF Doc. No. 252), and is uncontested by Defendants.
By affirmation, Plaintiffs' counsel identifies various shortcomings in the Defendants' responses and productions including, among others:
- Defendants' production of a mere 477 documents;[FN2]
- Of these 477 documents, only some twenty emails;
- No disclosures at all by the Ellis Brothers, including text messages from their devices;
 - No production of text messages whatsoever; and
- Few documents, if any, related to the transactions allegedly giving rise to Plaintiffs' claims
(NYSCEF Doc. No. 269 at 3-5). In their supporting memorandum, the Plaintiffs also identify the Defendants' refusal to search back-up media in their possession (NYSCEF Doc. No. 268 at 8).
For their part, the Defendants frivolously argue that they do not have custody or control over documents belonging to GemCap 1 (NYSCEF Doc. No. 299 at 7). This is directly at odds with the strict foreclosure agreement. In addition, GemCap 2 contends that the Gemelli Group (Mssrs. Ellis' company) has abandoned the material that is outside GemCap 2's possession. As to physical documents, the Defendants indicated that Gemelli Group abandoned the physical documents of GemCap 1 and as such they may no longer exist (NYSCEF Doc. No. 299 at 8). Thus, the Defendants contend they have produced all responsive documents in their custody and control (id. at 6-8) and have met their obligations. The argument fails.
As discussed above, Schedule 8.2.1 of the strict foreclosure agreement indicates that the Defendants acknowledged that Plaintiffs had threatened GemCap 1 with litigation as early as August 28, 2020, the date of the agreement (NYSCEF Doc. No. 252). As such, at least as of this date — i.e., prior to the strict foreclosure — there was a litigation hold in place and the Defendants (including Mssrs. Ellis) had an absolute obligation to maintain all documents relevant to this dispute. Thus, the Defendants position amounts to nothing more under the circumstances than an admission they have either purposefully or through gross negligence spoliated evidence. Evidence destroyed willfully, intentionally, or through gross negligence is presumed relevant, and may warrant an adverse inference (VOOM HD Holdings LLC v EchoStar Satellite, LLC, 93 AD3d 33, 45 [1st Dept 2012]; Zubulake v UBS Warburg LLC, 220 FRD 212, 219-220 [SDNY 2003]). The failure to institute a litigation hold does not, by itself, constitute gross negligence per se, but rather is one factor in determining whether discovery sanctions should issue (Chin v Port Auth. of New York & New Jersey, 685 F3d 135, 162 [2d Cir 2012]). Putting aside that the conduct further corroborates the allegations set forth in the TAC, the documents are unquestionably relevant and warrant, at a bare minimum, the factual admissions the Plaintiffs seek (NYSCEF Doc. No. 287). The errant documents are relevant not just as to the issue of personal jurisdiction, but also to Plaintiffs' core allegations that the Defendants breached the intercreditor and runoff agreements by compromising the credit quality of the Encore Park Fund 1 portfolio, then sought to fraudulently conceal their actions from Plaintiff before finally, as alleged in Plaintiffs' Second Amended Complaint, setting up GemCap 2 to avoid their liability to Plaintiffs.
Accordingly, (i) GemCap 2 is deemed to be the corporate successor to GemCap 1, (ii) Defendants GemCap 2 and Mssrs. Ellis are deemed to regularly do or solicit business within the state, to derive substantial revenue from interstate commerce, and to have reasonably expected their conduct to have consequences within the state, (iii) GemCap 2 and Mssrs. Ellis are deemed to have known and intended that Plaintiffs would rely on materially false financial information provided to Plaintiffs, and (iv) Defendants GemCap 2 and the Ellis Brothers are disallowed from introducing any evidence that should have been disclosed pursuant to any disclosure devices propounded by Plaintiffs to which the GemCap 2 Defendants fail to make a proper response in [*13]accordance with this Decision and Order.
Following the Defendants' above submissions or February 8, 2024 (whichever is earlier), the Plaintiffs shall be permitted to submit a letter response on or before February 22, 2024 no longer than three pages in length indicating what sanction they believe is appropriate under the circumstances which may include striking the defendants answer and issuing further sanctions pursuant to Rule 130.
The Court has considered Defendants' remaining arguments and finds them unavailing.
Accordingly it is hereby ORDERED that the motion for a stay (Mtn. Seq. No. 010) is denied; and it is further
ORDERED the motion for disclosure penalties (Mtn. Seq. 011) is granted to the extent that Defendants GemCap 2 and the Ellis Brothers are ordered to produce all responsive documents in their possession by February 8, 2024, and certain factual issues detailed above are resolved in Plaintiffs' favor; and it is further
ORDERED that the cross-motion for sanctions (Mtn. Seq. 012) is held in abeyance in accordance with the above; and it is further
ORDERED that a hearing shall be held on February 23, 2024 at 2 pm in person in Room 238 at 60 Centre Street as to the issue of sanctions.
Dated: January 30, 2024
Andrew Borrok, J.S.C.

Footnotes

Footnote 1:It does not create an issue of fact that certain documents list a California address for GemCap 1. What matters for jurisdictional purposes is that GemCap 1 maintained a New York address and that the alleged torts were committed in New York and what matters for the purposes of sanctions is that the statements made to this Court that GemCap 1 did not have a New York address were simply not true.

Footnote 2:Despite their contention that they have produced all responsive documents, these Defendants also explain their production of a mere 477 documents—compared to some 14,000 by Plaintiff—by noting that Plaintiff has been in the case longer, and GemCap 2 was given only two weeks to produce responsive documents, which would suggest that more time would have led to the production of more documents (NYSCEF Doc. No. 299 at 8, footnote 3). This is entirely without merit under the circumstances.